IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COLIN CHRISTOPHER FELTON,                                    OPINION and ORDER

                              Plaintiff,

                                                             09-cv-180-vis[1]

                       v.

TEEL PLASTICS, INC. and JAY L. SMITH,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       This is a civil suit for injunctive and monetary relief arising out of disputes between

plaintiff Colin Felton and defendants Jay Smith and Teel Plastics, Inc. involving Teel-Global

Resource Tech, which is a limited liability company that the parties owned jointly.  Plaintiff

asserts claims for breach of fiduciary duty, breach of contract and violations of Chapter 183

of the Wisconsin Statutes.  In addition, he seeks an accounting of his interest in the assets

of Teel-Global.

------

       [1]  Because the parties declined to allow Magistrate Judge Stephen Crocker exercise
jurisdiction over this case, it will be reassigned to a visiting judge.  Until that happens, I will
assume jurisdiction over the case for the purpose of handling issues that arise before trial.

1

Before the court is a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dkt. # 23.  Defendants contend that plaintiff is not a citizen of Texas, but rather of Wisconsin.  If plaintiff is a citizen of Wisconsin, they argue, diversity is destroyed and this court lacks jurisdiction to hear the case.  Further, defendants contend, the injuries plaintiff claims are properly characterized as injuries to Teel-Global Resource Tech, for which plaintiff may not bring an individual claim.

Defendants' motion will be denied in part and granted in part.  With respect to the issue of subject matter jurisdiction, I conclude that plaintiff is a citizen of Texas.  Because defendants are citizens of Wisconsin and the amount in controversy is greater than $75,000, jurisdiction is present under 28 U.S.C. § 1332.  With respect to the merits, I conclude that plaintiff has failed to state a claim for breach of fiduciary duty.  Because defendants' motion does not directly address plaintiff's other claims, I decline to dismiss those claims at this time.

I will draw jurisdictional facts from the declarations filed by the parties, dkts. ## 25 and 39, for the purposes of determining whether diversity jurisdiction exists.  On a motion to dismiss under Rule 12(b)(1), I am not bound to accept the truth of the allegations in the complaint and may properly look beyond the pleadings in my inquiry.  Commodity Trend Service, Inc. v. Commodity Futures, 149 F.3d 679, 685 (7th Cir. 1998).  However, with respect to the merits of plaintiff's claims, I am required under subsection (6) of Rule 12(b)

2

to accept all of the allegations in the amended complaint as true.  Swierkiewicz v. Sorema
N. A., 534 U.S. 506, 508, n.1 (2002).


FACTS

A.  Plaintiff's Domicile

Plaintiff Colin Felton is 51 years old and hails from San Diego, California, where he
spent the first 22 years of his life.  From 1994 until early 2004, plaintiff lived exclusively in
Madison, Wisconsin, where he worked at the USDA Forest Products Lab on the University
of Wisconsin campus.

After leaving Madison in early 2004, plaintiff spent several months in Costa Rica,
returning to Madison in November 2004.  In April 2005, plaintiff left Madison again,
traveling to Florida, continuing on a year-long sailing trip and then returning to San Diego
to care for his parents.  In June 2007, plaintiff moved east to help with a friend's business,
living at times in New York, Rhode Island and Massachusetts.  During the time plaintiff was
traveling, he failed to establish a permanent residence outside Wisconsin.  He maintained
a valid Wisconsin driver's license and voted absentee as a Wisconsin voter in the November
4, 2008 national election.

Plaintiff moved to his current location in Texas in November 2008, to be with his girl
friend.  Before his arrival, plaintiff arranged a new long-term business agreement in Texas

3

with a company called Kenaf Boards & Butanol LLC that he expects will last indefinitely. In pursuit of this business deal, plaintiff created a new limited liability company called BioComposEX LLC. Plaintiff 's new company provides technology and equipment necessary for the manufacture of deck boards and other products made by Kenaf Boards & Butanol. Kenaf Boards & Butanol has agreed to make licensing payments for the next fifteen years to BioComposEX, so long as BioCompsEX provides consulting services for at least five years. Most of this activity is expected to take place in Texas.

When plaintiff arrived in Texas in November 2008, he changed his voting registration to Texas and obtained a Texas driver's license and a Texas auto insurance policy.

Despite his attachments to Texas, plaintiff retains several ties to Wisconsin. Among the more notable is the house that plaintiff owns in Madison that he rents out to others. He returns to Madison occasionally to handle matters related to that property.

Plaintiff maintains a current 2009 listing in the Madison, Wisconsin Yellowbook, which is a friend's basement he rented briefly but left in 2005. Plaintiff was advised by his accountant that he would still need to pay income tax in Wisconsin for income earned in Texas because he was a "Wisconsin resident" as of mid-2008. (Neither side adduced evidence explaining the basis for the accountant's conclusion.) As of July 2009, plaintiff's Wisconsin driver's license was still listed as valid by the Wisconsin Department of Transportation. Plaintiff's registered address for his pilot's license remains a Wisconsin

4

address.  (He stopped flying in 2006 and did not update his registration information.)

Plaintiff filed this suit on March 31, 2009.

### B.  Teel-Global Resource Tech, LLC

In 1996, plaintiff established Global Resource Technologies LLC, a startup company that manufactured thermoplastic and natural fiber composite materials for a variety of uses, including roofing tiles.  In addition, the company conducted related research and product development, developing technologies involving natural fibers and thermoplastics.

To obtain financing for his business ventures, plaintiff turned to defendant Jay Smith, who reached a financing agreement with plaintiff in 2000.  Plaintiff and defendant Smith agreed that Global Resource Technologies would form a new company with defendant Smith's company, defendant Teel Plastics, Inc., to commercialize and expand upon the technologies developed by Global Resource Technologies.  This new company was called Teel-Global Resource Tech, LLC.  Plaintiff held a 30 percent interest in the company while defendant Teel Plastics held 70 percent.

The governing documents for the new company became effective on February 11, 2000.  These documents included a Memorandum of Agreement, a Bill of Sale & Assignment and an Operating Agreement.  Together, these documents established how the new company was to be governed. Under the Operating Agreement, defendant Smith was

5

the company's business manager and had "full and complete authority, power and discretion to manage and control the business." Plaintiff entered an "employment agreement" with Teel-Global Resource Tech for a term of three years, renewable for successive one-year terms upon agreement of the parties.

Plaintiff's employment with Teel-Global ended in April 2004 as a result of disagreements over running the business. Although defendant Teel Plastics was entitled to purchase plaintiff's entire interest two years after plaintiff's employment relationship ended, defendant Teel Plastics declined to exercise that option. During and after plaintiff's employment with the company, defendants Smith and Teel Plastics engaged in the following behavior that enriched them at the expense of plaintiff:

- In February 2004, defendants formed a new entity, TGRT Roofing, LLC, for the purpose of fulfilling a contract to develop and sell a roofing product owned by Teel-Global. Defendants failed to provide plaintiff with an interest in the new entity.

- Defendant Teel Plastics appropriated the assignment of patent rights for a color streaking process that Teel-Global Resource Tech developed.

- Defendant Teel Plastics entered into business relationships with other entities solely on its own behalf, using Teel-Global Resource Tech technologies.

- Defendants entered into a lease agreement with an entity owned by defendant Smith's wife in which Teel-Global would pay rent for its manufacturing facility at

6

substantially higher than market rates.

•      Defendants and a third party developed technology related to pest control stakes using Teel-Global resources without crediting Teel-Global on the ensuing patent application.

•      Defendants obtained income from the sale of hot tub siding that belonged to Teel-Global.

•      Defendants are attempting to sell extruded window profiles that were developed in a Teel -Global facility, with Teel-Global materials and technology.

In December 2008, defendant Smith dissolved and liquidated Teel-Global Resource Tech and transferred all of the company's assets to defendant Teel Plastics. Defendants did not provide prior notice to plaintiff of the dissolution of the company or the bill of sale. Rather, they notified plaintiff by letter after the dissolution was complete.

OPINION

A. <u>Diversity Jurisdiction</u>

A challenge to jurisdiction must be resolved before considering the validity of a claim. <u>Bell v. Hood</u>, 327 U.S. 678, 682 (1946). Therefore, I will start by examining plaintiff's citizenship status and its effects upon this court's jurisdiction.

The parties agree that federal jurisdiction in this case rests on a showing that the

parties are of diverse citizenship.  28 U.S.C. § 1332;  see also Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806).  A party's citizenship is central to determining whether diversity jurisdiction is proper.  Citizenship is more than just residency:  an individual is a citizen of the state in which he is domiciled, which is "the place one intends to remain." Dakuras v. Edwards, 312 F.3d 256, 258 (7th Cir. 2002).  As the proponent of jurisdiction, plaintiff has the burden of proving by a preponderance of the evidence that his citizenship was different from both defendants as of the time he filed this case.  LM Insurance Corp. v. Spaulding Enterprises, Inc., 533 F.3d 542, 547 (7th Cir. 2008); Denlinger v. Brennan, 87 F.3d 214, 216 (7th Cir. 1996).

Plaintiff avers that he has been domiciled in Texas since November 2008, where he lives with his girlfriend and is involved in a long-term business venture.  In support of his assertion that he lives in Texas and intends to stay there, plaintiff submitted a copy of his current Texas driver's license.  Additionally, plaintiff obtained a Texas auto insurance policy and changed his voting registration to Texas.  All of these actions occurred months before he filed this suit.

Defendants do not dispute plaintiff's averments directly, but point to connections to Wisconsin that plaintiff seems to maintain, such as a current valid Wisconsin driver's license and plaintiff's rental property in Madison.  In addition, defendants cite a statement by plaintiff that his accountant told him he must continue to pay income taxes in Wisconsin.

8

Although the facts defendant relies on may show that plaintiff maintains some contacts with Wisconsin, they do little to undermine plaintiff's averment that, at the time he filed the complaint in this case, he lived in Texas and intended to stay there indefinitely. Because that is all that matters for the purpose of establishing citizenship, <u>Dakuras</u>, 312 F.3d at 258, I conclude that plaintiff has shown by a preponderance of the evidence that he is a citizen of Texas.

## B.  The Nature of Plaintiff's Claims

Defendants' alternative ground for seeking dismissal of the case is that plaintiff is bringing claims that belong to Teel-Global and not to him.  Although the parties refer to this issue as one of "standing," neither party suggests that plaintiff has not alleged an injury sufficient for the purpose of federal jurisdiction.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (plaintiff has standing to sue when he has suffered injury that can be fairly traced to defendant and redressed through success on plaintiff's claim).  Instead, defendant's argument is that Wisconsin law does not recognize a cause of action for individual members of a limited liability company under the circumstances of this case.  Thus, the question is not one of jurisdiction but whether plaintiff has stated a claim upon which relief may be granted.

A problem with the parties' arguments is that they fail to differentiate among the four claims in the amended complaint.  Instead, both sides treat the issue as "all or nothing."

However, defendants' only argument in favor of dismissal focuses on <u>Notz v. Everett Smith Group, Ltd.</u>, 2009 WI 30, 316 Wis. 2d 640, 764 N.W.2d 904, a case that concerns claims of breach of fiduciary duty.  Defendants do not explain how <u>Notz</u> might apply to any of plaintiff's other claims.  In fact, in their opening brief, they make no mention of the other claims.  They refer in their reply brief to a request for an accounting, but a reply brief is not the place in which to raise a new argument.  <u>Carter v. Tennant Co.</u>, 383 F.3d 673 (7th Cir. 2004) (arguments raised for first time in reply brief are waived).  Because defendants had the initial burden to show that each of plaintiff's claims was legally insufficient, I will limit consideration in this opinion to plaintiff's breach of fiduciary claim.

In <u>Notz</u>, 2009 WI 30 at ¶ 9, the plaintiff was a minority shareholder in a corporation (ATS) suing the majority shareholder, the Smith Group.  (The parties agree that a limited liability company should be treated as a corporation under <u>Notz.</u>)  The plaintiff contended that the defendant had breached its fiduciary duty to the plaintiff by passing up an opportunity to acquire another company, Dickten and Masch, for ATS so that the defendant could buy the company itself and then sell "a subsidiary [of ATS] with great growth potential" to Dickten and Masch.  The defendant sought to dismiss the breach of fiduciary duty claim on the ground that the right to sue belonged to the corporation rather than to individual shareholders.

In determining whether a claim should be brought by an individual or on behalf of

10

the company, the state supreme court said that the underlying question is whether "the primary injury is to the corporation or the shareholder." Id. at ¶ 23.  A claim that injures the shareholder is one that "'affects a shareholder's rights in a manner distinct from the effect upon other shareholders,'" Id. (quoting Jorgensen v. Water Works Inc. (Jorgensen II), 2001 WI App. 135, 246 Wis. 2d 614, 624, 630 N.W.2d 230, 235 (Ct. App. 2001)), whereas allegations that "the Smith Group 'stripped [ATS] of its most important assets' and engaged in various acts of self-dealing are allegations of injury primarily to ATS."  All of the shareholders were affected equally by the alleged acts.  Id.

Illustrating the difference between injuries to the company and injuries to the shareholder, the court cited four cases, two of which involved determinations that an alleged injury was primarily to the shareholders and two of which came to the opposite conclusion. In Jorgensen v. Water Works, Inc., 2001 WI App 135, ¶¶ 18-19, 246 Wis. 2d 614, 630 N.W.2d 230, the court of appeals had held that minority shareholders could proceed on their allegations that shareholder-directors "stopped making distributions to some minority shareholders while continuing to pay themselves distributions." Notz, 2009 WI 30, at ¶ 21. Similarly, in Luther v. C.J. Luther Co., 118 Wis. 112, 94 N.W. 69 (1903), the court concluded that an individual action was appropriate on a claim that "two shareholder-directors had breached their fiduciary duty when they orchestrated the sale of new shares to an ally in order to gain control of the company." Notz, 2009 WI ¶ 21.

However, in  Rose v. Schantz, 56 Wis. 2d 222, 201 N.W.2d 593 (1972), the court concluded that the primary injury was to the corporation.  The plaintiff had alleged that the corporate directors threatened to pay corporate obligations before they became due, to redeem stock in the corporation and to allow the president to resign as part of a plan to deplete corporation of cash reserves.  Finally, in Read v. Read, 205 Wis. 2d 558, 556 N.W.2d 768 (Ct. App. 1996), the court concluded that a minority shareholder could not sue on his own behalf on a claim "that the controlling stockholders had misappropriated corporate assets and engaged in self-dealing "through their transactions with other corporations in which they were stockholders but he was not.'" Notz, 2009 WI 30, ¶ 22.

In Notz, the court concluded that the alleged injury was more similar to Read and Rose than to Luther and Jorgenson because the claim was that the defendant "render[ed] ATS incapable of continuing in [the plastics] business and that the Smith Group "stripped [ATS] of its most important assets," injuries that affected all the shareholders equally. Accordingly, the court concluded that the breach of fiduciary claim belonged to the corporation rather than to the individual shareholder.

The breach of fiduciary duty claim brought in this case is nearly identical to the self-dealing alleged in Read and Notz.  All of these cases involved the devaluation of a company for the personal profit of a majority stakeholder.  Any action taken by defendants to devalue the assets of Teel-Global would lower the value of all members' interest in the company

12

equally.  That defendants are alleged to have profited personally from their mismanagement of company resources does not alter the nature of the alleged injury to the company or the fact that the company owns the claim.  As a result, plaintiff is foreclosed from bringing an individual claim.

Plaintiff seems to concede in his brief that Teel-Global "could . . . establish claims" for breach of fiduciary duty, but he suggests that Teel-Global's claims and his claims are not mutually exclusive.  (Plaintiff does not argue that the dissolution of the company plays any part in the analysis of his right to bring an individual claim.)  In support of this suggestion, he cites footnote 26 in Notz in which the court discussed a related action proceeding in the Eastern District of Wisconsin in which the plaintiff was "pursuing an appraisal of his shares."  In addition, he cites HMO-W Inc. v. SSM Health Care System, 2000 WI 46, 234 Wis. 2d 707, 611 N.W.2d 250, in which the supreme court concluded that a court may consider evidence of unfair dealing in the context of an appraisal action.

Neither of these cases is relevant to plaintiff's claim of breach of fiduciary duty.  In Notz, the court made it clear that a claim for breach of fiduciary duty may be brought by the individual *or* the company, depending on the facts of the case, but not by both.  Notz, 2009 WI 30 at ¶ 23. Footnote 26 and HMO-W may support an argument that plaintiff may maintain a claim for an accounting, but I need not address that question because defendants failed to raise it properly.

13

ORDER

IT IS ORDERED that the motion to dismiss filed by defendants Jay Smith and Teel Plastics is DENIED in part and GRANTED in part.  It is GRANTED with respect to plaintiff Colin Felton's claim for breach of fiduciary duty.  Plaintiff's amended complaint is DISMISSED as to that claim.  Defendants' motion is DENIED in all other respects.

Entered this 5th day of October, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

14