IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COLIN CHRISTOPHER FELTON,

OPINION AND ORDER

                Plaintiff,

09-cv-180-bbc

      v.

TEEL PLASTICS, INC.  and JAY L. SMITH,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

From 2000 to 2008, plaintiff Colin Christopher Felton and defendant Teel Plastics, Inc. jointly owned Teel Global Resources Tech, LLC.  Defendant Teel Plastics owned 70% of the company, plaintiff owned 30% and defendant Jay Smith was the manager.  Plaintiff left the company in 2004 after a number of disagreements with defendant Smith, but he kept his 30% interest in the company.  Plaintiff had no other contact with the company until early 2009, when he received notice that defendant Teel Plastics had exercised its right under § 9.01 of the operating agreement to dissolve the company.  Relying on an accounting performed by Virchow Krause several months earlier, defendants determined that Teel Global had no assets to distribute because it was more than $5 million in debt to defendants Teel Plastics and Smith.

1

Plaintiff filed this lawsuit in March 2009.  In his pro se complaint, he asserted two "counts":  one for "unauthorized disclosure of confidential information" and one for "negligent management" of a Teel Global project. Dkt. #1. After obtaining counsel, he filed an amended complaint in which he abandoned his original claims and asserted new ones for breach of fiduciary duty, breach of contract and violations of Wis. Stat. Ch. 183.  In addition, plaintiff requested an accounting. In an order dated October 5, 2009, I granted defendants' motion to dismiss plaintiff's breach of fiduciary claim because plaintiff alleged injuries to Teel Global rather than to himself.  Dkt. #46.

Now before the court are two motions for summary judgment filed by defendants on plaintiff's remaining claims.  Dkts. ##74 and 84.  With the exception of the claim for an accounting under § 9.3 of the operating agreement, plaintiff has failed to develop a meaningful argument or set forth specific facts in support of his statutory claims and his claims for breach of contract. Summary judgment will be granted to defendants on these claims.

With respect to plaintiff's claim for an accounting under § 9.3, I agree with defendants that plaintiff has failed to make any showing that the accounting conducted by Virchow Krause in 2008 incorrectly calculated Teel Global's assets and liabilities by more than $5 million.  However, the Virchow Krause accounting valued the company as of December 2007 and the company was not dissolved until December 2008.  Although § 9.3

2

of the operating agreement required an accounting "from the date of the last previous accounting until the date of dissolution," no accounting was conducted after dissolution.

Neither side addressed the questions whether defendants (rather than Teel Global) are the appropriate parties to be sued for enforcement of § 9.3 and whether specific performance is appropriate under the circumstances of this case.  Accordingly, I am directing the parties to submit supplemental materials answering these questions.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

## UNDISPUTED FACTS

### A.  Formation of Teel Global

In 1996, plaintiff Colin Felton formed Global Resources, LLC in Madison, Wisconsin "to develop materials, products and processes utilizing natural fiber-thermoplastic composites."  The process involves combining fibers made out of natural materials such as wood with plastics to create products such as roof panels and hot tub siding.  Global Resources sold the composite materials to third parties for injection molding.

In 1998 plaintiff began looking for investors in his company.  Between 1998 and 2000 plaintiff met several times with defendant Jay Smith, who was the owner of defendant Teel Plastics, Inc., a Wisconsin manufacturer of plastic tubing, fiberglass and other plastic

products.

In February 2000, plaintiff and defendants formed Teel Global Resources Tech, LLC.

Defendants drafted the operating agreement, which included the following provisions:

4.12 Liability for Certain Acts. The Manager(s) shall perform their managerial duties in good faith, in a manner they reasonably believe to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A Manager who so performs the duties of Manager shall not have any liability by reason of being or having been a Manager of the Company. Except as provided in the Wisconsin Act or this Agreement, a Manager shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage is the result of fraud, willful misconduct, material breach of fiduciary duty or a wrongful taking by the Manager.

* * *

7.3 Books and Records.  The Company shall establish such books, records and accounts for the Company as are customary for businesses similarly situated and as accurately reflect the financial condition and position of the Company in accordance with generally accepted accounting principles consistently applied.

* * *

8.6 Notice of Fundamental Company Transactions. The Manager shall provide Felton with written notice of (a) merger, consolidation or reorganization of the Company; (b) sale, lease, exchange or other disposition of all or substantially all of the Company's property or assets; or adoption of any plan or agreement to do any of the foregoing.

* * *

9.1 Dissolution, The Company shall not be dissolved upon the dissociation of

4

any Member. Rather, the Company shall only be dissolved upon the occurrence of any of the following events: (a) By the written agreement of Members owning or holding at least a majority of the outstanding Units; or (b) Upon the judicial dissolution of the Company pursuant to the Wisconsin Act.

* * *

9.3 Liquidation.  Upon dissolution, an accounting shall be made of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution.

Under the agreement, defendant Teel Plastics owned 70% of the membership interests and plaintiff owned 30%.  Defendant Smith was the manager of Teel Global.  Under a separate agreement, plaintiff became an employee of Teel Global.

### B.  Management of Teel Global

In 2001 defendant Teel Plastics constructed a building for Teel Global's operations. Teel Plastics' monthly mortgage payment for the building was $16,427; Teel Global paid Teel Plastics $16,500 a month in rent.

In April 2002, plaintiff wrote defendant Smith, expressing "concerns regarding the viability and path" of Teel Global.  Plaintiff believed that Teel Global was "quickly l[o]sing [its] advantage as THE natural fiber composites company" because it did "not have a definitive corporate strategy for rapidly capturing market share" and it had "not committed

to a single 'first' product that will establish [it] in the marketplace and generate needed income for continued product development." Plaintiff set forth a number of proposals for Smith's consideration. Plaintiff and defendant Smith met to discuss plaintiff's concerns. (The parties dispute Smith's response to the letter.)

In 2003 and 2004 representatives of defendant Teel Plastics and Teel Global met with Elk Corporation, a roofing manufacturer, regarding the potential manufacture of a roofing product. In February 2004 Teel Plastics formed TGRT Roofing, LLC, which entered into a "Product Development, Purchase and Sale Agreement" with Elk to "design, develop, test and produce a prototype composite polymer roofing product." (Plaintiff refers to the product as "Panelshake," but the evidence he cites does not use that name.) Neither plaintiff nor Teel Global held any interest in the new company.

On February 12, 2004, plaintiff sent a memo to defendant Smith about the Elk contract and various other issues. He wrote that he did not "see any real problems with" the contract, but wanted "to get an understanding of [his] role in the new company." He listed a number of concerns and stated that he "would like to reduce [his] time commitment to keep [his] stress level under control." Finally, he stated that he "would like to get a copy of [Teel Global's] tax returns (including all K-1s) for the past years, amend [Teel Global's] Operating Agreement, enter into an employment or consulting agreement and organize and sign an operating agreement for Teel-GRT Roofing LLC." Smith spoke to plaintiff about the

6

matters in the memo.  (Neither side proposed any fact about the content of that discussion or discussions.)  Plaintiff's lawyer sent Smith a followup memo dated February 26, 2004, but Smith did not respond to it.  In March 2004, plaintiff resigned as an employee, but retained his 30% interest in Teel Global.

A patent was "developed and obtained . . . for the composite roofing panel that was to be manufactured for the Elk project."  (It is not clear from the parties' proposed findings of fact who owned the patent.  Oddly, neither side submitted a copy of the patent or even identified the patent number.)  In April 2006 Elk terminated its contract with TGRT Roofing after "the product" failed a "fire test."  "[T]he product was never commercially launched and . . . no sales were ever recorded."  Dft. Teel Plastics' PFOF ¶ 26, dkt. #77; Plt.'s Resp. to Dft. Teel Plastics' PFOF ¶ 26, dkt. #123.

Plaintiff's expert values the "Panelshake" product at between $ 2.2 million and $7.3 million.  In January 2009, defendant Teel Plastics made a presentation to Owens-Corning regarding Panelshake.

In 2005 defendant Teel Plastics entered into a confidentiality agreement with Dow Agrosciences, LLC, to develop a natural fiber composite deck board product.  In 2006, Dow approached Teel Plastics about a project involving pest control and termite stakes.  This project was listed on the Teel Global "Opportunities Evaluation," which projected "potential yearly sales" at $1 million to $2 million.  It listed the "probability of [the] project" as 50%.

7

In addition, the evaluation stated, "[i]f pricing and development plan and sales agreement are agreed upon, then I think the probability increases to 85-90% that project will move forward."

In December 2008 Dow and defendant Teel Plastics were completing the plan to conduct test runs. The tests took place in February 2009.  By the summer of 2009, Dow had hired Baker Tilly (formerly Virchow Krause) to seek an investor for the project. Baker Tilly prepared a memorandum that was given to investors, which included the following information:  Dow and Teel Plastics had been working on the project together for some time, Dow would guarantee the price of the capital investment and it was a very attractive opportunity (in that it should provide a return of 18% with very little risk), assuming sales of one million units.  By 2010, the assumption increased to more than three million units. Teel Plastics and Dow entered into a contract in April 2010.

Teel Global did not have its own bank account, separate from defendant Teel Plastics' account.


C.  Dissolution of Teel Global

According to defendants' records, Teel Global did not have net income for any of the years it existed.  In 2008, defendant Smith and Thomas Thompson (chief financial officer of Teel Plastics) began to consider dissolving Teel Global.  At the request of defendant Teel

Plastics, Virchow, Krause and Company, LLP, conducted an evaluation of the company. Defendants did not inform the accounting firm about the Dow project or provide it the document titled "TGRT Opportunities." (Defendants say that the Dow project was too speculative at that point to use it in the valuation.) In its August 2008 report, Virchow Krause concluded that, as of December 2007, Teel Global had $925,000 in assets, but that it owed $5.75 million to Teel Plastics and $283,000 to Smith. Virchow Krause did not give an opinion on "whether the financial statements of [Teel Global] . . . presents fairly, in all material respects, the financial position of" Teel Global. After that report, Smith and Thompson agreed to dissolve Teel Global.

On December 11, 2008, Thompson emailed plaintiff, asking for his current address. Defendants Smith and Teel Plastics executed a Consent of Manager and Majority member, dissolving and liquidating Teel Global. Articles of Dissolution dated December 22, 2008 were filed with the Wisconsin Department of Financial Institutions. In a bill of sale signed by defendant Smith, Teel Global transferred all of its assets to defendant Teel Plastics in exchange for "cancell[ing]" all of Teel Global's debt to Smith and $643,000 of Teel Global's debt to Teel Plastics.

Plaintiff responded to Thompson's email on December 23, 2008. At that time, counsel for Teel Plastics sent plaintiff all the documents related to the dissolution.

9

OPINION

A.  Subject Matter Jurisdiction

"The first question in every case is whether the court has jurisdiction."  Avila v. Pappas, 591 F.3d 552, 553 (7th Cir. 2010).  Even if the parties do not raise the issue, courts have an independent obligation to determine whether the case before them falls within one of the classes of cases that Congress has authorized the federal judiciary to decide. Buchel-Ruegsegger v. Buchel, 576 F.3d 451, 453 (7th Cir. 2009).  The parties have raised no federal question in this case, so the only potential basis for jurisdiction is 28 U.S.C. § 1332, which requires a showing that each defendant is a citizen of a different state from the plaintiff and that the amount in controversy is more than $75,000.  Smart v. Local 702 International Brother of Electrical Workers, 562 F.3d 798, 803 (7th Cir. 2009); Smoot v. Mazda Motors of America, Inc., 469 F.3d 675, 676 (7th Cir. 2006).

The parties make a common mistake by stating in their proposed findings of fact that plaintiff is a "resident" of Texas and defendant Smith is a "resident" of Wisconsin. "[R]esidence and citizenship are not synonyms and it is the latter that matters for purposes of diversity jurisdiction."  Meyerson v. Harrah's East Chicago Casino, 299 F.3d 616, 617 (7th Cir. 2002).  See also McMahon v. Bunn-O-Matic Corp., 150 F.3d 651, 653 (7th Cir. 1998)  ("An allegation of residence is inadequate .").  A person is not a "citizen" of a state under § 1332 simply because he lives there; he must intend to remain in the state as well.

10

Dakuras v. Edwards, 312 F.3d 256, 258 (7th Cir. 2002).  Although the distinction may seem to be a subtle one, on multiple occasions the Court of Appeals for the Seventh Circuit has criticized and even sanctioned parties for failing to establish diversity jurisdiction with precise facts.  E.g., Camico Mutual Insurance Co. v. Citizens Bank, 474 F.3d 989, 992 (7th Cir. 2007) (criticizing plaintiff because "the amended complaint only alleged the residence of two of the accounting firm's members without stating the citizenship of each of the accounting firm's members"); BondPro Corp. v. Siemens Power Generation Corp., 466 F.3d 562 (7th Cir. 2006) (sanctioning lawyers $1000 for failing to identify citizenship of parties).

Although the parties did not include facts about plaintiff's and defendant Smith's citizenship in their proposed findings of fact, the error is harmless because the record shows that plaintiff is a citizen of Texas and defendant Smith is a citizen of Wisconsin.  Earlier in the case, plaintiff filed an affidavit in which he averred that he intends to stay in Texas indefinitely.  Dkt. #39.  Defendant Smith admitted in his answer that he was a citizen of Wisconsin.  Dkt. #48, at ¶ 4. Because the parties agree in their proposed findings of fact that defendant Teel Plastics is incorporated in Wisconsin and has its principal place of business there, dkt. # 123, at ¶ 2, plaintiff has met his burden to show that his citizenship is different from defendants'.  Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C., 385 F.3d 737, 741 (7th Cir. 2004) (corporation is citizen of state of incorporation and state in which its principal place of business is located).

11

The only information about the amount in controversy in the proposed findings of fact is plaintiff's conclusory allegation that "the amount in controversy exceeds the sum of or value of $75,000, exclusive of interest and costs."   Plt.'s PFOF ¶ 1, dkt. #124. Defendants do not directly dispute that allegation, but they "[a]ffirmatively allege that Plaintiff has failed to produce any evidence establishing that he is entitled to $1 or more from Defendants."  Dfts.' Resp. to Plt.'s PFOF ¶ 1, dkt. #131.  Although defendants deny that plaintiff has proven damages, it does not matter for the purpose of establishing jurisdiction whether plaintiff is ultimately able to prove more than $75,000 in damages. Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC, 589 F.3d 881, 886 (7th Cir. 2009) ("Ordinarily a failure to prove any damages does not disturb jurisdiction under a statute that sets a damages threshold. The failure is a failure on the merits rather than a failure of jurisdiction."); Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006) ("Whether [the plaintiff] actually recovers more than $75,000 is immaterial.").  Rather, the question is whether plaintiff satisfied the amount in controversy at the time he filed the amended complaint.

In the amended complaint, plaintiff alleged that the amount in controversy was greater than $75,000 and defendants did not deny that allegation.  "When the jurisdictional threshold is uncontested, [the court] generally will accept the plaintiff's good faith allegation of the amount in controversy unless it appears to a legal certainty that the claim is really for

12

less than the jurisdictional amount." McMillian v. Sheraton Chicago Hotel & Towers, 567 F.3d 839, 844 (7th Cir. 2009) (quotations omitted).  Because plaintiff alleged in his complaint that defendants in many instances kept for themselves large sums of money that should have been allocated to Teel Global, I cannot say that "it appears to a legal certainty" that plaintiff's claims were worth less than $75,000 when he filed the complaint.

## B. Accounting

Plaintiff devotes most of his attention to his claim for an accounting.  In his amended complaint, plaintiff alleged that he needed an accounting because defendants "hold property belonging to [him]—[his] interest in the assets of [Teel Global]," but he "does not know the amount of his property held by defendants."  Am. Cpt. ¶¶ 38-39, dkt. #20.  Plaintiff does not give any further explanation of the basis for this claim in his amended complaint or his brief, but his allegation that defendants are wrongfully holding his share of Teel Global's assets suggests that he believes defendant Teel Plastics concluded incorrectly when it dissolved Teel Global that Teel Global's liabilities outweighed its assets by more than $5 million.  Thus, he wants an accounting to help him show that Teel Global was actually in the black when it was dissolved and that he is entitled to his share of the company's assets.

Although the standard for obtaining an accounting is not clearly defined, it is an equitable remedy and therefore not an absolute right.  Richman v. Security Savings and Loan

Association, 57 Wis. 2d 358, 362-363, 204 N.W.2d 511, 513 (1973).  In the cases cited by the parties, courts have most often concluded that an accounting is an appropriate remedy when the plaintiff has shown that the defendant owes him money, but through no fault of his own, the plaintiff is unable to determine the amount.  E.g., ABM Marking, Inc. v. Zanasi Fratelli, S.R.L., 353 F.3d 541, 545 (7th Cir. 2003) (defendant owed plaintiff royalties, but plaintiff could not determine amount because of defendant's inadequate records); State v. Chicago & N.W. Railway Co., 132 Wis. 345, 112 N.W. 515, 519 (1907) (accounting ordered to determine amount of licensing fees due).  See also Antigo Superior Nursing Home, Inc. v. First Federal S & L Association, 51 Wis. 2d 196, 200-02, 186 N.W.2d 265, 267-68 (1971) ("The need for discovery as to amounts due under all the agreements and liabilities deriving therefrom creates the reason and ground for seeking and being entitled to equity jurisdiction.").  The party seeking an accounting has the burden to show that he has a right to one.  1 Am. Jur. 2d Accounting § 66, at 695 (2005).

    At the outset, plaintiff faces the difficulty that defendants conducted an accounting in 2008 through an accounting firm.  If defendants had presented no evidence of the company's actual worth, it would be reasonable to require an accounting.  Perkins v. Brown, 901 N.E.2d 63, 66 (Ind. Ct. App. 2009) (ordering accounting because "[n]o evidence was presented regarding what the actual finances of [the company] were prior to the dissolution, including what income was actually received and what the actual expenses of the LLC were

14

during this period of time").  However, it makes little sense to require defendants to undergo the expense of conducting a second accounting unless plaintiff has adduced evidence that the first one failed to reflect Teel Global's true financial condition at the time of dissolution. Historic Charleston Holdings, LLC v. Mallon, 673 S.E.2d 448, 454 (S.C. 2009) (declining to require second accounting when plaintiff failed to show that benefit of doing so would justify delay and expense); cf. Kennedy v. Miller, 582 N.E.2d 200 (Ill. Ct. App. 1991) ("If a party seeks credits against the accounting, such party has the burden to prove them.") Further, because the only purpose of an accounting is to show that the defendants owe plaintiff money, I would be unwilling to order another one unless plaintiff's evidence should suggest that the accounting firm's appraisal is wrong by more than $5 million.  1A C.J.S. Accounting § 6 (2005) (underlying purpose of accounting is to prevent unjust enrichment). Although it would defeat the purpose of an accounting to require plaintiff to show in advance everything a new accounting would reveal, I agree with defendants that plaintiff is not entitled to go on a burdensome, expensive fishing expedition without making a preliminary showing that doing so will change the original result.  1 Am. Jur. 2d Accounting § 57, at 684 (2005) (accounting not appropriate if it "would result in great inconvenience and possible oppression to the defendant").

Plaintiff has not made the necessary showing.  Much of plaintiff's evidence is directed at proving the wrong issue.  For example, plaintiff argues that defendant Teel Plastics

15

charged Teel Global too much in rent, excluded Teel Global from potentially lucrative business deals, disregarded plaintiff's opinions, failed to invest in Teel Global and generally engaged in "self-dealing transactions unfair to" Teel Global before the dissolution. Plt.'s Br., dkt. #119, at 9. However, the purpose of an accounting is not to allow a dissatisfied party to second-guess every business decision made throughout a company's existence. An accounting determines what a company actually was worth at the time of dissolution, not what it *could have* been worth if the company had been managed differently. I have dismissed the complaint as to plaintiff's breach of fiduciary duty claim, so plaintiff cannot show that he is entitled to an accounting by submitting evidence that defendants did not run Teel Global the way he believes they should have. If plaintiff believed that defendants were running the company into the ground, he could have brought a derivative suit, but he chose not to.

Once plaintiff's evidence and argument about defendants' mismanagement is disregarded, plaintiff has little left to support his claim. The only specific criticisms of Virchow Krause's valuation in plaintiff's proposed findings of fact is that Virchow Krause failed to consider the value of the Panelshake roofing product and the value of a potential project with Dow Agrosciences. This argument falls short for several reasons.

First, it is not clear what plaintiff means when he says that the accounting firm failed to properly credit Teel Global's involvement with the Panelshake "product" and the Dow

16

"project."  In particular, plaintiff fails to explain how a "product" or a "project" can be used to value a company.  If Teel Global had intellectual property rights in a valuable product or process, that would be a company asset.  However, plaintiff never identifies with any specificity any intellectual property in Teel Global's possession at the time of dissolution.  In fact, plaintiff's position seems to be that the patent or patents involved in the Panelshake product were assigned to defendant Teel Plastics, not Teel Global.  Although plaintiff seems to believe that the patent or patents *should have* been assigned to Teel Global, that is another issue outside the scope of the lawsuit.  (Defendants' position is that Teel Global was the original assignee of the patent, but that the patent was transferred to Teel Plastics after the dissolution to offset plaintiff's debt.  If that is the case, plaintiff would have to show that defendants failed to properly value the patent, which he has not done.)  With respect to the Dow project, plaintiff refers generally in his proposed findings of fact to "trade secrets" and "confidential and protected information," without identifying what these might be.

Plaintiff says that Virchow Krause should have considered Teel Global's potential future sales to Dow, but he never explains how, in the absence of a contract or other exclusive right, predictions about a future business relationship can be valued in the context of a dissolution.  Defendants cite T & HW Enterprises v. Kenosha Associates, 206 Wis. 2d 591, 605, 557 N.W.2d 480, 485 (Ct. App. 1996), for the proposition that future profits are often too speculative to provide a basis for damages.  This case is not directly on point

17

because it involves a determination of damages for a breach of contract rather than a determination of the value of a company, but plaintiff cites no authority that would support a different rule under the facts of this case.

Plaintiff's argument about potential future sales of the company seems to be less about what Teel Global was actually worth at the time of dissolution and more about what the company *could have* been worth if defendants had held out longer.  That is, plaintiff seems to be challenging defendant Teel Plastics' decision to dissolve the company when it did.  Plaintiff does not deny that § 9.1 of the operating agreement gave Teel Plastics the right to dissolve Teel Global without plaintiff's approval.  However, he says that Teel Plastics had a fiduciary duty to consider Teel Global's interests before deciding to dissolve.

Plaintiff cites no authority for the argument that defendant Teel Plastics would breach a fiduciary duty by doing what the operating agreement authorized it to do.  However, even if Teel Plastics breached such a duty, it is too late to raise that issue now. In the order granting defendants' motion to dismiss with respect to plaintiff's breach of fiduciary claim, I did not read the complaint as including a claim that defendant Teel Plastics breached a fiduciary duty to plaintiff by dissolving Teel Global when it did.  Plaintiff never filed a motion for reconsideration, arguing that I construed his claim too narrowly.  Although plaintiff seems to be attempting to assert such a claim now, summary judgment is not the time to bring new claims into the case.  Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir.

2002) (plaintiff "may not amend his complaint through arguments in his brief in opposition

to a motion for summary judgment") (quoting Shanahan v. City of Chicago, 82 F.3d 776,

781 (7th Cir.1996)).  See also EEOC v. Lee's Log Cabin, Inc., 546 F.3d 438, 443 (7th Cir.

2008) ("The very first mention of [the new claim] came in the EEOC's response to Log

Cabin's motion for summary judgment, and the [district] court was entitled to regard this

as 'too late' to change so basic a factual premise in the case.")

Even if I assume that defendants' accounting was deficient because it failed to take

into consideration "the Panelshake product" or "the Dow project," plaintiff has failed to

adduce any specific evidence showing that defendants undervalued Teel Global by more than

$5 million.  Only two of plaintiff's proposed findings of fact address this issue.  In proposed

finding of fact no. 55, plaintiff says that "Robinwood Consulting estimates the net present

value of the Panelshake as $7.3 million under one scenario and $2.2 million under another

scenario."  He cites generally to four different expert reports to support that proposed fact.

In proposed finding of fact no. 60, he says that the "Dow termite stakes project was listed

on the 'TGRT Opportunities Evaluation,' which stated potential yearly sales were $1.2

million dollars and estimated the project at 50% probability increasing to 85-90%

probability if certain conditions were met."

Neither of these proposed facts is anything other than a mere conclusion.  Plaintiff

does not provide any support for them or explain how he arrived at them.  These omissions

19

are fatal to his claim at the summary judgment stage. <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); <u>Hall v. Bodine Electric Co.</u>, 276 F.3d 345, 354 (7th Cir. 2002) ("It is well-settled that conclusory allegations . . . do not create a triable issue of fact."); <u>Drake v. Minnesota Mining & Manufacturing Co.</u>, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). Under this court's summary judgment procedures, "[a]ll facts necessary to sustain party's position on a motion for summary judgment must be explicitly proposed as findings of fact." <u>Helpful Tips for Filing a Summary Judgment Motion</u>, <u>attached to</u> Preliminary Pretrial Conference Order, dkt. #29. If the support for these conclusions is lurking somewhere in the record, it is not defendants' or this court's obligation to find it. <u>Chelios v. Heavener</u>, 520 F.3d 678 (7th Cir. 2008) ("Given the often daunting nature of motions for summary judgment, we have emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules.") (internal quotations omitted).

Alternatively, plaintiff argues that the records used in the 2008 accounting are unreliable. For example, in proposed finding of fact no. 74, plaintiff states that "[t]he

statements of underlying financial information that Virchow Krause used to appraise [Teel Global] were unreliable due to use of commingled cash accounts, [Teel Global] had fixed assets on its books that benefited other Teel properties, improper recording of expenses, and overcharging for certain outside services." In proposed finding of fact no. 84, plaintiff says that defendants kept "inadequate records." Plaintiff is on the right track. An order for an accounting may be appropriate when the "accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." Zell v. Jacoby-Bender, Inc., 542 F.2d 34, 36 (7th Cir. 1976). However, it is not enough for plaintiff to assert generally that defendants' records are a hopeless mess. He must show that ordinary discovery is inadequate to provide the answers he seeks. Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems, 428 F.3d 706, 715 (7th Cir. 2005) (upholding denial of accounting because "all of the accounting information pertinent to Kempner's claims could and should have been revealed through discovery"); Zell, 542 F.2d at 36 ("Legal remedies should not be characterized as inadequate merely because the measure of damages may necessitate a look into the plaintiff's business records.") Without providing any details about the allegedly inadequate report, plaintiff has not made the required showing for an accounting.

Finally, plaintiff says that he was hindered in assessing the accuracy of the accounting because defendants withheld documents in discovery. However, if plaintiff believed that

21

defendants were withholding relevant documents, the proper response would have been to file a motion to compel under Fed. R. Civ. P. 37 rather than remain silent until it is time to "put up or shut up."  Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005).  At a minimum, plaintiff should have filed a motion for additional discovery under Fed. R. Civ. P. 56(f) as soon as defendants filed their motion for summary judgment.

Even if I construed plaintiff's argument as raising a belated request under Rule 56(f) for additional discovery, I would deny the motion.  Rule 56(f) requires the party seeking relief to identify the "specific evidence which [he] might have obtained from [additional discovery] that would create a genuine issue [of] material fact."  Davis v. G.N. Mortgage Corp., 396 F.3d 869, 885 (7th Cir. 2005).  Plaintiff supports his argument with nothing but a conclusory allegation, stating in his proposed findings of fact that he "requested and did not receive other documents."  Plt.'s PFOF ¶ 97, dkt. #124.  He does not provide either a general description of the documents he believes he did not receive or an explanation of their relevance in showing that defendants valued Teel Global incorrectly.

One potential limitation of the accounting defendants performed is that it did not cover the last year before Teel Global was dissolved.  I address this issue in the context of plaintiff's claim for breach of § 9.3 of the operating agreement.

22

B. <u>Breach of Contract</u>

In his summary judgment brief, plaintiff argues that defendants violated four provisions of the operating agreement: (1) § 4.12, "Liability for Certain Acts"; (2) § 7.3, "Books and Records"; (3) § 8.6, "Notice of Fundamental Company Transactions"; and (4) § 9.3, "Liquidation."  I will start with defendants' two general objections to these claims.

The first of these is that plaintiff does not have "standing" to bring a breach of contract claim because the claims belong to Teel Global instead of plaintiff as an individual.  That conclusion, defendants say, follows necessarily from this court's October 5, 2009 decision in which I dismissed plaintiff's complaint as to his breach of fiduciary duty claim because the basis for that claim was an allegation that defendants had devalued the assets of Teel Global, an injury that belonged to Teel Global rather than plaintiff.  Dkt. #46, at 10-13 (citing <u>Notz v. Everett Smith Group, Ltd.</u>, 2009 WI 30, 316 Wis. 2d 640, 764 N.W.2d 904;  <u>Jorgensen v. Water Works, Inc.</u>, 2001 WI App 135, ¶¶ 18-19, 246 Wis. 2d 614, 630 N.W.2d 230;  <u>Rose v. Schantz</u>, 56 Wis. 2d 222, 201 N.W.2d 593 (1972);  <u>Read v. Read</u>, 205 Wis. 2d 558, 556 N.W.2d 768 (Ct. App.1996)).

I disagree with defendants that the dismissal of plaintiff's breach of fiduciary duty claim requires dismissal of the breach of contract claims.  As plaintiff points out, an important difference between the two types of claims is that plaintiff is a party to the operating agreement.  Generally, contracts create enforceable rights between those who sign

23

them.  Becker v. Crispell-Snyder, Inc., 2009 WI App 24, ¶ 9, 316 Wis. 2d 359, 366, 763 N.W.2d 192, 196 ("A party wishing to enforce a contract must either be a party to that contract or a third-party beneficiary.").  Defendants cite no authority for the proposition that the general rule does not apply to operating agreements for limited liability companies. None of the cases they cite applying the "derivative action doctrine" involved a claim for breach of contract.  Krier v. Vilione, 2009 WI 45, 317 Wis. 2d 288, 766 N.W.2d 517 (common law tort and statutory claims); Kagan v. Edison Bros. Stores, Inc., 907 F.2d 690, 692 (7th Cir. 1990) (tort).  See also Decker v. Decker, 2006 WI App 247, 298 Wis. 2d 141, 726 N.W.2d 664 (assuming that parties who signed operating agreement could sue for violations of that agreement)

It may be that some claims involving breach of an operating agreement could belong to the company rather than the parties who signed the contract, but that depends on whether the particular provision that was allegedly breached is directed toward protecting the interests of the company or the individual party.  In this case, defendants simply argue generally that the derivative action doctrine applies to plaintiff's breach of contract claims. They do not address the language of each provision, although it is clear that at least some of these provisions create individual rights and obligations of the parties.  For example, § 8.6 of the operating agreement required "[t]he Manager" to "provide *Felton* with written notice" of particular events.  It would make no sense to treat a breach of that provision as an injury

24

to the company rather than to plaintiff individually.  In any event, because defendants fail to develop an argument that the derivative action doctrine applies to any of the provisions plaintiff is asserting in this case, that argument is forfeited.  Carmichael v. Village of Palatine, Illinois, 605 F.3d 451, 460-61 (7th Cir. 2010); General Auto Service Station v. City of Chicago, 526 F.3d 991, 1006 (7th Cir. 2008).

Defendants' second general objection is that plaintiff's breach of contract claims must be dismissed because plaintiff has not proven damages.  This argument confuses claims for breach of contract with tort violations.  "The victim of a breach of contract is always entitled to nominal damages if he proves a breach but no damages. The victim of a tort, usually not." Olympia Hotels Corp. v. Johnson Wax Development Corp.,  908 F.2d 1363, 1372 (7th Cir. 1990) (citing Vasselos v. Greek Orthodox Community, 24 Wis. 2d 376, 129 N.W.2d 243 (1964)).  Thus, lack of damages is not grounds for dismissal.

I turn next to the particular provisions plaintiff is asserting in this case and defendants' specific objections to those assertions.

1. Section 4.12

Arguing that he has a cause of action under the contract for wrongs done to him, plaintiff points to the last sentence of § 4.12, which states that "a Manager shall not be liable to the Company or to any Member for loss or damage sustained by the Company or to any

25

Member, unless the loss of damage is the result of fraud, willful misconduct, material breach of fiduciary duty or a wrongful taking by the Manager." Plaintiff's reliance on this provision is misplaced. The provision makes it clear that it does not *create* a cause of action; rather, it *limits* the types of claims that may be asserted against the manager to those involving "fraud, willful misconduct, material breach of fiduciary duty or a wrongful taking by the Manager." Of the claims in this list, breach of fiduciary duty is the only one that plaintiff raised in his complaint, but I dismissed that claim in the October 5, 2009 order because it was a claim of the company rather than plaintiff individually. Plaintiff cannot revive that claim simply by repackaging it as a breach of contract by defendant Smith.

Plaintiff did not allege in his complaint any claims for fraud, willful misconduct or a wrongful taking, so he cannot raise them now. In any event, even if these claims were properly before the court, plaintiff has forfeited them by failing to develop any supporting argument or set forth specific facts in support of them. In the section of his brief discussing § 4.12, plaintiff says without elaboration that he "claims that Smith's conduct amounts to fraud, willful misconduct, material breach of fiduciary duty and wrongful taking by the Manager." Plt.'s Br., dkt. #119, at 21. He includes a separate section about "willful misconduct," in which he responds to defendants' argument that they did not engage in "willful misconduct" as understood by the Wisconsin courts in <u>Gottsacker v. Monnier</u>, 2007 WI App 34, 2007 WL 259836 (unpublished) (interpreting "willful failure to deal fairly"

26

under Wis. Stat. § 183.402), and <u>IGL-Wisconsin Awning, Tent and Trailer Co., Inc. v.</u>
<u>Greater Milwaukee Air and Water Show, Inc.</u>,  185 Wis. 2d 864, 520 N.W.2d 279 (Ct.
App. 1994) (interpreting "wilful misconduct" under Wis. Stat. §§ 181.287 and 181.297).
However, plaintiff's only argument is that those cases are not controlling because the court
must engage in a "fact specific inquiry."  Plt.'s Br., dkt. #119, at 23.  That is not helpful.
Plaintiff does not identify a particular cause of action for "willful misconduct" that would
apply to this case, much less explain why he believes defendant Smith engaged in such
misconduct. Similarly, plaintiff says that defendants committed fraud in various ways, but
he fails to propose specific facts supporting these allegations or explain how any of these
alleged acts meet the elements for a fraud claim.


2.  <u>Section 7.3</u>

        This section required "[t]he Company" to "establish such books, records, and
accounts for the Company as are customary for businesses similarly situated and as
accurately reflect the financial condition and position of the Company in accordance with
generally accepted accounting principles consistently applied."  Even if I assume that § 7.3
gives one member a right to sue another member for inadequate record-keeping, this claim
fails because plaintiff has not proposed any specific findings of fact regarding any alleged
deficiencies in Teel Global's records.

27

3.  Section 8.6

This section required "The Manager" to provide plaintiff with "written notice"of a "disposition of all or substantially all of the Company's property or assets."  The parties do not seem to dispute that § 8.6 applied to the dissolution.  In addition, the parties agree that defendants informed plaintiff of the dissolution and the transfer of Teel Global's assets to defendants, but not until after the events occurred.

Because this claim applies to defendant Smith only, a threshold question is whether a violation of this provision could constitute "willful misconduct" or fraud as required by § 4.12 to permit a claim against defendant Smith.  Plaintiff does not address this question in the context of his discussion of this claim.  Instead, he focuses on the question whether the word "notice" necessarily implies that plaintiff was entitled to be informed of the dissolution *before* it occurred or whether notification after-the-fact is sufficient.  The agreement does not define the term and dictionaries and case law do not provide a uniform definition.  Some authorities define "notice" as a "warning."  E.g., American Heritage Dictionary 1203 (4th ed. 2000)  However, other authorities define "notice" simply to mean "knowledge," without a temporal element.   State Central Credit Union v. Bayley, 33 Wis. 2d 367, 370, 147 N.W.2d 265, 268 (1967); Black's Law Dictionary (8th ed. 2004).  Plaintiff concedes that "[t]he term 'notice' has different meanings [and] is therefore ambiguous."  Plt.'s Br., dkt. #119, at 19.  Although I agree with plaintiff that an ambiguous contract should be construed

28

against the drafter, <u>Liebovich v. Minnesota Insurance Co.</u>, 2008 WI 75, ¶ 32,  310 Wis. 2d 751, 773, 751 N.W.2d 764, 774, plaintiff's concession counsels against a finding that any breach by defendant Smith was willful or fraudulent.  If defendant Smith chose one of two reasonable interpretations, it is difficult to argue that he engaged in willful misconduct or fraud, even if he chose the interpretation that better served his own interests.  In any event, because plaintiff fails to develop an argument on this issue, he has forfeited it.


4.  <u>Section 9.3</u>

Under this section, "[u]pon dissolution, an accounting shall be made of the accounts of the Company's and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution."  The parties agree that no accounting was performed for the year 2008; the Virchow Krause accounting valued the company as of December 2007.

Defendants' only argument with respect to this provision is that plaintiff has not proven any damages because he has not demonstrated that Teel Global decreased its debt or acquired any additional assets in 2008.  This argument fails because plaintiff does not have to prove damages to prove a breach of contract.   <u>Olympia Hotels</u>, 908 F.2d at 1372.

However, this claim raises two other questions that neither side addressed in their briefs.  The first is whether defendants may be sued at all for a violation of § 9.3.  The

provision does not expressly identify either of the defendants as responsible for performing the accounting; it just says that one must be performed.  Because the accounting is for Teel Global, it may be that Teel Global was the proper party to be sued.  E.g., Gottlieb v. Northriver Trading Co. LLC, 58 A.D.3d 550 (N.Y. App. Div. 1st Dept. 2009).  Although plaintiff suggests in his brief that Teel Global could not be named as a party in litigation after dissolution, this view seems to be contrary to Wisconsin law.  Wis. Stat. § 183.0903(3) ("Dissolution of a limited liability company does not . . . [p]revent commencement of a civil . . . proceeding by or against the limited liability company.")  Alternatively, if Teel Global is not the proper party, it is not clear whether the responsible party is defendant Teel Plastics as the party that ordered the dissolution or defendant Smith as Teel Global's manager.

A second issue is whether plaintiff is entitled to specific performance of this provision. Because specific performance is an equitable remedy, its allowance or refusal "rests in the discretion of the court."  Edlin v. Soderstrom, 83 Wis.2d 58, 70, 264 N.W.2d 275, 281 (1978).  Courts must consider a number of factors, including the fairness of ordering relief under the circumstances.  McKinnon v. Benedict, 38 Wis. 2d 607, 617-18, 157 N.W.2d 665, 669-70 (1968).

Because neither side addressed these issues, I will give them an opportunity to do so. In addressing the second question, the parties should discuss whether it is appropriate to order specific performance in this case without a showing that doing so could lead to an

30

award of damages and, if not, which party should bear the burden of proving damages or the lack of damages.  Further, in anticipation of the possibility that an accounting might be ordered, the parties should address their view of the proper scope of the accounting and submit a proposed order.

## C.  Statutory Claims

Plaintiff contends that defendants violated several statutes in Wis. Stat. ch. 183, which govern the creation, management and dissolution of limited liability companies.  In its opening brief, defendant Teel Plastics discusses each statute plaintiff identified in his amended complaint and explains why it believes it has not violated any of the statutes.  Dft. Teel Plastics' Br., dkt. #76, at 22-23.  In his brief, plaintiff devotes one sentence to the merits of his claims under Wis. Stat. ch. 183: "Violation of §§ 183.0402, .0903 and 0905 rely upon the same facts supporting Plaintiff's breach of contract claims under sections 4.12 and 9.3 of the operating agreement."  Plt.'s Br., dkt. #119, at 25.  That is insufficient to preserve this claim.  Each of these statutes contains numerous provisions covering varying subjects.  Even if plaintiff is relying on the same facts used to support his other claims, plaintiff cannot defeat defendants' motions for summary judgment without at least identifying the particular statutory provision he believes defendants violated and explaining the basis for his belief.

31

ORDER

IT IS ORDERED that

1.  The motions for summary judgment filed by defendants Teel Plastics, Inc., dkt. #74, and Jay Smith, dkt. #84, are GRANTED on all claims, with the exception of plaintiff Colin Christopher Felton's claim that defendants breached § 9.3 of the operating agreement by failing to perform an accounting "from the date of the last previous accounting until the date of dissolution."  A decision is reserved on that claim pending the receipt of additional briefing from the parties.

2.  The parties may have until August 2, 2010, in which to file supplemental materials addressing the following issues:

(1) whether defendant Teel Plastics or defendant Smith or  both may be sued under § 9.3 of the operating agreement;

(2) whether plaintiff is entitled to specific performance for a violation of § 9.3; and

(3) the proper scope of the order, in the event that the court orders specific performance under § 9.3.  The parties may have until August 12, 2010, in which to

file responses to any other party's materials.

Entered this 12th day of July, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge