IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COLIN CHRISTOPHER FELTON,

              Plaintiff,

     v.

TEEL PLASTICS, INC. and JAY L. SMITH,

              Defendants.

OPINION AND ORDER

09-cv-180-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Colin Christopher Felton is suing defendants Teel Plastics, Inc. and Jay Smith because he believes they cheated him out of his fair share of the assets of the now-dissolved company he and Teel Plastics jointly owned, Teel-Global Resource Tech, LLC. (Defendant Jay Smith was the manager of Teel-Global and the owner of defendant Teel Plastics.)  Defendants' position is that plaintiff is entitled to nothing because Teel-Global's debts outweighed its assets by more than $5 million at the time of dissolution. Plaintiff does not know how much the company was worth at the time of dissolution, but he believes he is entitled to an accounting under common law and Teel-Global's operating agreement so that this determination can be made.  In addition, he has asserted claims for breach of contract and violations of Wisconsin statutes governing limited

1

liability companies.

In an opinion and order dated July 12, 2010, I granted defendant's motion for summary judgment in most respects. In particular, I concluded that plaintiff had failed to show that he was entitled to an accounting with respect to Teel-Global's worth as of December 31, 2007, because an accounting firm had provided a valuation of the company up until that time showing that the company was more than $5 million in the red and plaintiff had failed to adduce any specific evidence showing that the accounting firm's valuation was wrong. In addition, I concluded that plaintiff had not met his burden on summary judgment to show that defendants had violated § 4.12, § 7.3 or § 8.6 of the operating agreement or any Wisconsin statute. However, a question remained whether defendants could be held liable under § 9.3 of the operating agreement, which required an accounting "from the date of the last previous accounting until the date of dissolution," which was not until one year after the accounting firm provided its valuation. Accordingly, I directed the parties to provide supplemental briefs addressing two questions: (1) whether defendant Teel Plastics or defendant Smith or both may be sued for failing to conduct an updated accounting for Teel-Global; and (2) whether plaintiff is entitled to specific performance for a violation of § 9.3. In addition, I asked the parties to submit a proposed order in the event that I concluded that specific performance was an appropriate remedy for any violation of § 9.3.

2

The parties have responded to the July 12 order.  In addition, plaintiff has filed a 36-page motion for reconsideration, significantly longer than even his summary judgment brief.  The arguments in plaintiff's motion are not always easy to follow, but he seems to be raising four issues: (1) whether the court used the proper summary judgment standard; (2) whether the court erred in dismissing plaintiff's statutory claims; (3) whether the court erred in refusing to consider plaintiff's allegations of defendants' past misconduct in determining whether plaintiff is entitled to an accounting; and (4) whether the court erred in treating the accounting firm's valuation as admissible evidence.  (Plaintiff raises another issue about the court's application of the "business judgment rule," but I need not address the issue because I did not rely on such a rule in the summary judgment opinion or even discuss it.)  Because plaintiff has adduced no evidence that defendants owe him money, I am denying plaintiff's motion for reconsideration and entering judgment in favor of defendants.


OPINION

A.  Motion for Reconsideration

1.  Summary judgment standard

Plaintiff argues that the court required too much of him to defeat defendants' motion for summary judgment.  In particular, he says that the decision "appears to speak

3

in terms more applicable to sufficiency of evidence at trial" than to the standard for summary judgment motions.  Plt.'s Br., dkt. #145, at 4.  He repeats throughout his briefs that he need not prove his claim until trial.  <u>Id.</u> at 4 ("It will be at trial for [plaintiff] to demonstrate the specific likelihood that ordering an accounting is reasonable and appropriate in light of all of the evidence."); <u>id.</u> at 34 ("Whether the right to discovery was sufficient in this case can only be determined at trial."); Plt.'s Br, dkt. #143, at 8 ("This determination can only be made after the Court, at trial, hears all of the evidence."); Plt.'s Br., dkt. #150, at 11 ("[T]rial is necessary to determine the type and scope of relief available to Mr. Felton."); <u>Id.</u> at 11-12 ("Mr.  Felton believes that the evidence at trial . . . will demonstrate a strong likelihood that a fair, independent accounting will establish [Teel Plastics's] obligation to provide him compensation for his interest in" Teel-Global.)

Plaintiff's argument represents a fundamental misunderstanding of the summary judgment standard.  Long ago the Supreme Court stated that the standard for surviving a motion for summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)," which is whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).  Following <u>Anderson</u>, the Court of Appeals for the Seventh Circuit has reminded parties that "[s]ummary judgment is not a dress

4

rehearsal or practice run; it is the . . . [moment] when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." <u>Schacht v. Wisconsin Dept. of Corrections</u>, 175 F.3d 497, 504 (7th Cir. 1999).  Thus, plaintiff cannot simply say that all will be made clear at trial.  He was required to show that his evidence was sufficient to permit a reasonable factfinder to render a verdict in his favor.

Plaintiff is correct that the inquiry under Fed.  R.  Civ.  P.  56 focuses on whether the plaintiff has identified factual disputes.  However, this does not mean that a plaintiff can defeat a motion for summary judgment simply by claiming that facts are disputed.  "Only disputes as to facts which are material, i.e., facts that might affect the outcome of the suit under the governing law, and genuine, i.e., disputes for which the evidence is such that a reasonable jury could return a verdict for the nonmoving party, will preclude summary judgment."  <u>Jenkins v. Bartlett</u>, 487 F.3d 482, 492 (7th Cir. 2007).  In many cases, plaintiff failed to show that disputes he identified were genuine *or* material.  In any event, plaintiff is wrong to believe that his burden on summary judgment is different from his burden at trial.

## 2.  <u>Statutory claims</u>

In the summary judgment order, I dismissed plaintiff's claims under Wis. Stat. ch. 183 because plaintiff had failed to develop an argument that either defendant had

5

violated any particular provision of that chapter.   In his motion for reconsideration, plaintiff argues that the court erred in granting summary judgment on these claims because *defendants* failed to show that he did not have a viable claim.

Again, plaintiff misunderstands the summary judgment standard.   In cases like this one in which the moving party does not bear the burden of proof at trial, that party is not required to raise up and shoot down every possible argument that the nonmoving party might assert in support of a claim.   It is plaintiff's burden to prove his claim, not defendants' burden to disprove it.   Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Plaintiff is correct that defendants had the initial burden, but it is not a heavy one. They simply needed to "infor[m] the district court of the basis for [their] motion." Id. at 323.   They met this burden by identifying each statute plaintiff cited in the complaint and arguing that none of them provided a basis for relief.   At that point, it became plaintiff's burden to show that a reasonable jury could rule in his favor on each of those claims.   Not only did plaintiff fail to meet that burden, he failed to articulate any reason why he believed defendants could be held liable under a particular statutory provision.

Even if it could be said that defendants did not put plaintiff on sufficient notice that he needed to identify the basis for his statutory claims in his summary judgment materials, plaintiff's motion for reconsideration proves that he is not entitled to a trial on

6

those claims.  Plaintiff had another opportunity in his motion to explain why he believes defendants violated his rights under Wis. Stat. ch. 183, but he failed yet again to provide even a hint of the alleged relevancy of those statutes to this case.

A primary purpose of summary judgment is "to weed out unfounded claims." Gates v. Caterpillar, Inc., 513 F.3d 680, 688 (7th Cir. 2008).  It would defeat this purpose to hold a trial on claims when the plaintiff is unable to articulate the issues that need to be tried, despite multiple opportunities to provide an explanation.

3.  Defendants' alleged misconduct

In his summary judgment materials, plaintiff argued that he was an entitled to an accounting under common law in part because defendants had made a number of decisions over the years that prevented the company from reaching its potential. However, I concluded that his allegations of wrongdoing were not relevant to his claim because "[a]n accounting determines what a company actually was worth at the time of dissolution, not what it could have been worth if the company had been managed differently."  Dkt. #140, at 15-16.

In his motion for reconsideration, plaintiff cites HMO-W, Inc. v. SSM Health Care System, 2000 WI 46, 234 Wis.  2d 707, 611 N.W.2d 250, for the proposition that "Wisconsin law clearly permits misconduct evidence in an action involving the value of a

7

minority member's interest in a legal entity."  Plt.'s Br., dkt. #145, at 13.  Although plaintiff does not clearly explain how he believes the "misconduct evidence" is relevant in this case, his theory seems to be that any "self-dealing" by the defendants during any point of Teel-Global's existence should be used in determining what plaintiff was owed at dissolution and that such self-dealing sufficiently muddies the waters regarding Teel-Global's "true" worth to justify a judicially supervised accounting.

Plaintiff's argument is not persuasive for several reasons.  First, he did not cite HMO-W in his summary judgment brief or otherwise explain how he believed any past self-dealing by defendants should affect any calculation of his share of Teel-Global's assets.  More important, he fails to explain even now why HMO-W is instructive in this case.  In HMO-W, minority shareholders in a corporation had exercised their rights under Wis. Stat. ch. 180 to receive the "fair value" of their shares after the majority shareholders overruled the minority's objection to a merger with another company.  Just before the merger, the corporation ordered an appraisal, which resulted in an estimate of the company's net value as between $16.5 million and $18 million.  After the minority shareholders demanded payment for their shares, the corporation hired a new appraiser, who lowered the estimated value to $7.4 million.  The minority shareholders argued that the corporation should be estopped from using the lower appraisal to calculate the fair value of the shares.

The supreme court concluded that a "court determining the fair value of shares subject to appraisal must consider all relevant factors," including "evidence of unfair dealing affecting the value of a dissenter's shares." <u>HMO-W</u>, 2001 WI 46, at ¶ 53 (citations and internal quotations omitted). However, the court upheld the trial court's decision to accept the second appraisal because the supreme court "perceive[d] no reason for the [trial] court to have relied solely on the value and methodology of the first appraiser or to have accepted a valuation it deemed inaccurate." <u>Id.</u> at ¶ 59.

The differences between <u>HMO-W</u> and this case are legion. <u>HMO-W</u> involved a particular statutory mechanism for dissenting shareholders to receive the fair value of their shares. The court did not purport to be setting forth general principles for courts to apply in any other case involving the distribution of assets. Even if <u>HMO-W</u> were relevant  in determining the right to an accounting when a limited liability company dissolves, plaintiff fails to explain how the case supports his position. The question in <u>HMO-W</u> came down to whether a court could reject an appraisal if it were shown that it was fraudulent. There is no suggestion in the case that members may use dissolution as an opportunity to challenge any decision made during the company's existence on the ground that the company would have been worth more if a different path had been taken. Rather, <u>HMO-W</u> is consistent with this court's conclusion that evidence of defendants' alleged misconduct would have been relevant if plaintiff had shown that it

9

would be probative on the issue of Teel-Global's actual worth at the time of dissolution. Plaintiff did not make that showing.  Instead, his evidence was directed at showing what Teel-Global *could have* been worth.  If plaintiff's position were accepted, every dissolution would devolve into chaos, allowing any member to claim he was entitled to a larger share for each instance in which other members failed to follow his advice regarding the direction of the company.  That cannot be the law.

Even if <u>HMO-W</u> allowed plaintiff to revisit past financial decisions, his argument would fail for two additional reasons.  First, as I noted in the summary judgment order, plaintiff's proposed findings of fact consist primarily of conclusions with little or no specific factual support.  His allegations of misconduct were no better.  For example, he alleged that defendant Teel Plastics charged Teel-Global too much for rent, but his only support is a conclusory allegation that the "fair market rent" was lower than what defendant Teel Plastics charged.  Plt.'s PFOF ¶ 37, dkt. #124.  In other instances, plaintiff argued that defendant Teel Plastics "should have" given Teel-Global more opportunities to grow, such as by giving Teel-Global a larger role in a contract with Elk Corporation, but he fails to cite any authority showing that defendants' actions violated the law.

Second, even if plaintiff could show specific acts of misconduct, he fails to develop any argument explaining how those acts would be used in determining Teel-Global's

10

worth at the time of dissolution or plaintiff's fair share of the assets, much less show any reason to believe that any adjustments made would be enough to prove that defendants owe plaintiff money. Instead, he simply lists everything he thinks defendants did wrong over the course of Teel-Global's existence. In fact, plaintiff's general strategy in this case seems to be one of blindly throwing everything he has against the wall with the hope that something will stick, but never articulating a coherent theory for his claims. Under Anderson and Celotex, that strategy will always be doomed to fail.

4.  Virchow Krause valuation

Finally, plaintiff argues that the court erred in "accept[ing]" the Virchow Krause valuation for the purpose of summary judgment. Plt.'s Br., dkt. #154, at 22. This argument is a nonstarter. Plaintiff disagreed with the conclusion of the valuation, but he did not argue that it was inadmissible, so he waived any evidentiary objection he had. In any event, even if I disregarded the valuation, doing so would not help plaintiff. Plaintiff does not disagree with the conclusion in the summary judgment order that "an accounting is an appropriate remedy when the plaintiff has shown that the defendant owes him money, but through no fault of his own, the plaintiff is unable to determine the amount." Dkt. #140, at 14. Thus, even if defendants' evidence is excluded, this does not mean that plaintiff wins by default. "When there is no evidence concerning a critical

11

fact . . . the allocation of the burden of production of evidence becomes critical." <u>Metzl</u> <u>v. Leininger</u>, 57 F.3d 618, 622 (7th Cir. 1995).  Because it is *plaintiff's* burden to shown that he is owed money, the absence of evidence on this point would mean that his claim still fails.

### B.  Supplemental Briefing on § 9.3 of the Operating Agreement

Section 9.3 of the operating agreement provides: "Upon dissolution, an accounting shall be made of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution."   In the summary judgment order, I concluded that I could not resolve plaintiff's claim that defendants violated § 9.3 by failing to conduct an updated accounting because two issues remained unresolved:  (1) whether either defendant could be sued under § 9.3; and (2) whether specific performance was appropriate without any showing by plaintiff that an updated accounting would lead to a different result.  The parties have addressed these questions in their supplemental briefs.   In addition, defendants argue that they *did* conduct an updated accounting so there can be no breach of contract.

The parties agree that the operating agreement does not resolve the first question directly because it does not assign to any particular person or entity the responsibility for

conducting an accounting.  Not surprisingly, they disagree about the proper inference to be drawn from this silence.  Defendants argue that the operating agreement is explicit regarding the obligations of the individual members, so that it may be inferred that Teel-Global is the responsible party when no party is specified.  Dfts.' Br., dkt. #148 (citing Goebel v.  First Federal Savings & Loan Association, 83 Wis. 2d 668, 266 N.W.2d 352 (1978) ("[A] specific mention in a contract of one or more matters is considered to exclude other matters of the same nature or class not expressly mentioned.")).  Defendants find further support for their position in § 9.2 of the operating agreement and Wis. Stat. § 183.093(3) because both of these provisions state that the company continues its existence until the affairs of the company, including any accountings, are wound up.

As with many other issues in this case, plaintiff does not stick with one argument. Instead, he advances competing arguments that each defendant may be held liable for failing to conduct an updated accounting.  First, plaintiff argues that defendant Teel Plastics is responsible because it "did not maintain separate accounts" for Teel-Global, because "dissolving [Teel-Global] was in part for [Teel Plastics's] benefit and because Teel Plastics made the decision to dissolve the company.  Plt.'s Br., dkt. #143, at 3. Second, plaintiff argues that defendant Smith is responsible because § 9.3 requires him to "take all actions necessary to effect the dissolution and liquidation of the Company,"

13

which includes conducting an accounting.  Plaintiff does not present these as arguments in the alternative or otherwise acknowledge that accepting his arguments as to one defendant would require rejecting his arguments as to the other defendant.

Although plausible arguments exist for holding that any one of Teel Plastics, Teel-Global or Smith is liable for conducting an accounting at dissolution, I think defendants have the better argument.  Because any accounting would be conducted on behalf of Teel-Global and it is the assets of that company that are being distributed, it follows that Teel-Global is ultimately responsible for insuring that the accounting is performed as required, particularly because the operating agreement does not place the burden squarely on anyone else.  Even if it may be inferred that the operating agreement contemplates that defendant Smith, as the manager, would perform all the actions necessary to wind up the company's business, including an accounting, Teel-Global may still be the party legally responsible if Smith is simply acting as an agent of that company.  However, because neither side cites any authority directly supporting their position, I am hesitant to resolve the case on these grounds.

Assuming that Teel Plastics or Smith is the proper party on this claim, I agree with defendants that it would be pointless to order an updated accounting because the only evidence shows that Teel-Global continued to lose money in 2008.  McKinnon v. Benedict, 38 Wis. 2d 607, 617, 157 N.W.2d 665, 669 (1968) ("[E]quity will not enforce

14

an agreement which would impose an unreasonable hardship on the defendant in order to enforce a bare legal or nonbeneficial right on the plaintiff."). According to Teel-Global's financial records, Teel-Global lost an additional $360,000 in 2008. Dfts.' Br., dkt. #141, at 9 (citing Thompson Aff., dkt. #142, exh. A). (Defendants argue that these records satisfied the requirement in § 9.3 to perform an updated accounting, but I need not decide that question.) Plaintiff does not dispute the validity of Teel-Global's records or point to any of his own evidence regarding the company's finances in 2008, with the exception of an allegation that defendant Teel Plastics "Charged [Teel Global] $20,539 for building improvements for a building [Teel Plastics] owned in July of 2008." Plt.'s Br., dkt. #143, at 7. Plaintiff does not provide the context for this charge or otherwise develop an argument that the charge was improper. It does not matter. Even if the charge is excluded, it does not change the bottom line, which is that plaintiff has failed to adduce any evidence that Teel-Global made a profit in 2008 or in any other year.

Plaintiff's frustration over Teel-Global's demise is understandable. When a business fails, those who lost their investment often look for someone else to blame, particularly when they believe that the company could have been saved by better management. It may be that defendants did not try as hard as they could have to make Teel-Global a successful company or to include plaintiff in important decisions. However, plaintiff cannot sustain a lawsuit on the basis of an unfortunate result and a list

15

of vague complaints about the way the company was run over an eight-year period, particularly when he failed to take any legal action about his disagreements with defendants at any time during the company's existence.

It is telling that plaintiff was unable to comply with the court's directive to submit a proposed order on specific performance "because he does not think there is a basis yet to identify the specific provisions."  Plt.'s Br., dkt. #150, at 11 n.5.  After more than a year, plaintiff still is unable to identify with any specificity what laws defendants violated or even what relief he wants from the court.  It is not the responsibility of the defendants or this court to determine the scope of plaintiff's claims or develop the facts in support of those claims.  Plaintiff's failure to meet his burden of proof means that judgment must be entered in favor of defendants.


ORDER

IT IS ORDERED that the motion for reconsideration filed by plaintiff Colin Christopher Felton, dkt. #144, is DENIED.  The clerk of court is directed to enter

16

judgment in favor of defendants Teel Plastics, Inc. and Jay L. Smith and close this case.

Entered this 26th day of August, 2010.

BY THE COURT:
/s/
BARBARA B.  CRABB
District Judge

17